2020 IL App (1st) 171024
No. 1-17-1024

SECOND DIVISION
July 21, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10 CR 12446 |
| | ) | |
| ANTHONY TOWNSEND, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | James B. Linn, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Lavin and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal stems from the circuit court's summary dismissal of defendant Anthony
Townsend's petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1
*et seq.* (West 2016)). Townsend was convicted by jury trial of first degree murder on a theory of
accountability and received a sentence of 40 years' imprisonment. He filed a direct appeal, in
which this court affirmed the judgment of the circuit court. On this appeal, Townsend challenges
the circuit court's summary dismissal of his postconviction petition as frivolous and patently
without merit. He argues that the summary dismissal was erroneous where his petition stated an
arguable claim that his trial counsel provided ineffective assistance by usurping his decision to

receive a bench trial instead of a jury trial. We reverse and remand for second-stage postconviction proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     Townsend was charged by indictment with 13 counts of first degree murder (720 ILCS 5/9-1(a)(1), (2), (3) (West 2006)), 2 counts of attempted first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)), 1 count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), 2 counts of attempted armed robbery (*id.* §§ 8-4, 18-2(a)(2)), and 2 counts of aggravated unlawful restraint (*id.* § 10-3.1) arising from an incident in Chicago on December 23, 2006.[1]

¶ 4     Prior to trial, Townsend was initially represented by a public defender. On October 5, 2011, the trial court asked this first attorney whether Townsend would receive a bench or jury trial, and the first attorney stated, "Jury." On January 23, 2012, the court stated that Townsend's counsel had withdrawn and a second, private attorney appeared on Townsend's behalf.

¶ 5     On March 2, 2012, the trial court asked Townsend's second attorney whether Townsend would receive a bench or jury trial. The second attorney stated, "It will likely be a jury trial date." It is not clear from the record that Townsend was present on this court date. On May 24, 2012, the trial court called Townsend's case and noted that "Anthony Townsend is here." After discussing scheduling, the court stated, "By agreement for trial September 18th. It's a jury trial." Townsend's second attorney stated, "Yes." Nothing in the record suggests that Townsend ever raised an objection to having a jury trial prior to or during the jury trial, which commenced on November 26, 2012.

---

[1]While the record does not clearly reflect when the State nol-prossed the various counts in Townsend's charging instrument, the record reflects that Townsend was sentenced based on only one count of first degree murder.

¶ 6　Because the issues on appeal only concern the conduct of Townsend's counsel prior to trial, we will briefly summarize the facts presented at trial.

¶ 7　The State presented the testimony of Dameon Johnson and Jamere Smith, two employees at a barbershop located on the 8200 block of South Cottage Grove Avenue. The testimony showed that on December 23, 2006, at about 10:30 p.m., Karim Muhaiman, Johnson, and Smith were closing the barbershop for the night. Johnson and Smith exited the barbershop's back door when Townsend and another man climbed out of a dumpster with their faces partially covered and carrying firearms.

¶ 8　Johnson struggled with Townsend, and Muhaiman put his arm around Townsend's neck. Meanwhile, Smith struggled with the other man, who eventually shot his firearm towards the rear of the barbershop and walked away. Townsend's hat fell off his head during the altercation, and Townsend left the scene after Johnson pulled the firearm from Townsend's hand. Once Townsend and the other man were gone, Johnson reentered the barbershop and called the police.

¶ 9　Chicago police officers arrived at the scene and found Karim lying in the barbershop's rear doorway with multiple gunshot wounds. A black winter cap was recovered from the scene, and DNA from the cap matched Townsend's DNA from a government database. On April 21, 2010, a buccal swab was performed on Townsend. The next day, Johnson identified Townsend from a lineup; he recognized Townsend because Johnson used to cut his hair. After it was confirmed that Townsend's DNA matched the DNA from the cap found at the scene, Townsend was arrested on June 15, 2010. The parties stipulated as to an autopsy report, which showed that Karim had received three gunshot wounds and that bullets had damaged his right lung, heart, diaphragm, stomach, and spleen.

¶ 10　The State rested.

¶ 11    The defense presented testimony from a Chicago police officer and detective showing that when they arrived at the scene of the incident on December 23, 2006, Johnson did not report that he recognized the offender.

¶ 12    The jury found Townsend guilty of first degree murder and found that Townsend had discharged a firearm during the commission of the offense. The trial court denied Townsend's motion for new trial, which set forth no argument that Townsend was denied his right to waive a jury trial. Townsend then received a sentence of 40 years' imprisonment for one count of first degree murder.

¶ 13    On direct appeal, Townsend argued that (1) the evidence at trial was insufficient, (2) his trial counsel was ineffective for failing to present the testimony of an expert witness on the unreliability of identifications, and (3) he was denied a fair trial due to prejudicial statements made by the prosecutor during closing arguments. *People v. Townsend*, 2016 IL App (1st) 130862-U, ¶ 2. On June 1, 2016, we affirmed the judgment of the circuit court. *Id.* ¶ 126.

¶ 14    On February 6, 2017, Townsend filed a *pro se* postconviction petition, alleging that he received ineffective assistance of trial counsel when his trial counsel refused to allow him to waive a jury trial. In support of his petition, Townsend filed an affidavit, which alleged:

"1) That my counsel refused to allow me to waive a jury trial.

2) During private consultation between myself and counsel ([the public defender]), I told counsel that I wanted a bench trial, but counsel refused and told me that she was running the show and that I was getting a jury trial.

3) Had my counsel not disregarded and overrode my desire for a bench trial, if given the decision I would have waived a jury trial and proceeded to a bench trial in this case."

¶ 15    On March 22, 2017, the circuit court called Townsend's case and stated:

"There's a transcript when the case was set for trial, and his lawyer at that time was a public defender ***. [The public defender] became a judge and [Townsend] actually hired private counsel, [who] came in, and the case was tried to a jury.

Mr. Townsend thinks that [the public defender] somehow insisted that he take a bench trial. *** [H]is private lawyer, who came in and tried the case to a jury was never in discussion about a bench trial.

I thought the evidence was very strong against him. Had it been a bench trial, the result would have been the same, he certain[ly] would have been convicted of murder.

So I find his [*pro se*] post-conviction petition is without merit and is denied."

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18                            A. Ineffective Assistance Claim

¶ 19    On appeal, Townsend argues that the circuit court erred in summarily dismissing his postconviction petition, where he stated an arguable claim that his first attorney provided ineffective assistance by usurping his decision to waive a jury trial. The State responds that the record positively rebuts Townsend's claim, where the case was set for a jury trial in Townsend's presence but Townsend failed to object or contemporaneously assert his right to a bench trial. The State also argues that Townsend cannot claim his first attorney affected Townsend's ability to choose a bench trial because the jury trial occurred about a year after the first attorney withdrew and Townsend never claimed he told his second attorney he wanted a bench trial.

¶ 20    While the parties do not dispute whether this issue was preserved for this appeal, we note that Townsend's ineffective assistance claim was not forfeited, as it concerns discussions

between Townsend and his first attorney that are not in the record. See *People v. Munson*, 206 Ill. 2d 104, 124 (2002) (forfeiture does not foreclose a defendant from raising a claim in a postconviction petition based on matters outside the record); see also *People v. Harris*, 206 Ill. 2d 1, 15 (2002) ("[T]he doctrines of *res judicata* and waiver are relaxed where the facts relating to the claim do not appear on the face of the original appellate record.").

¶ 21    The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a remedy for criminal defendants whose constitutional rights were substantially violated at trial or sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. At the first stage of postconviction proceedings, the circuit court must determine whether the defendant's postconviction petition is " 'frivolous or is patently without merit.' " *People v. Boykins*, 2017 IL 121365, ¶ 9 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2014)). The circuit court may only summarily dismiss a petition as frivolous or patently without merit where the petition "has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition has "no arguable basis either in law or in fact" where it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one that is completely contradicted by the record," and "[f]anciful factual allegations include those that are fantastic or delusional." (Internal quotation marks omitted.) *People v. White*, 2014 IL App (1st) 130007, ¶ 18. During first stage postconviction proceedings, "the court treats allegations of fact as true so long as those allegations are not affirmatively rebutted by the record." (Internal quotation marks omitted.) *Id.* We review *de novo* the summary dismissal of a postconviction petition. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 22    Defendants have a constitutional right to the effective assistance of counsel at trial and on direct appeal under the United States Constitution and the Illinois Constitution. *People v.*

*Jackson*, 205 Ill. 2d 247, 258-59 (2001); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Under the *Strickland* standard, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Specifically, the defendant must demonstrate "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 36. During first-stage postconviction proceedings, "a defendant need only show that he can arguably meet those two standards, *i.e.*, it is *arguable* that his counsel was deficient and it is *arguable* that the outcome of his case would have been different absent the deficient representation." (Emphases in original.) *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 20.

¶ 23    "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. Additionally, "a 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *Id.*

¶ 24    Both the United State Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, §§ 8, 13) guarantee the right to a trial by jury as a fundamental right. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). Under the Illinois Constitution, that right includes "the right of an accused to waive trial by jury." *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988); see also *People v. Hoffman*, 379 Ill. 318, 321 (1942) ("The right to a trial by an impartial judge where a jury is waived is equally guaranteed and safeguarded by the

constitution."). "[T]he prerogative to choose a bench trial over a jury trial belongs to the defendant and not to his counsel." *People v. McCarter*, 385 Ill. App. 3d 919, 943 (2008). Where a defendant claims that trial counsel was ineffective for usurping the defendant's right to waive a jury trial, the defendant need not show that a bench trial would have reached a different outcome in order to satisfy the *Strickland* analysis. *Id.* at 944. Rather, "prejudice is presumed if there is a reasonable probability that the defendant would have waived a jury trial in the absence of the alleged error." *Id.* at 943. This is because "such fundamental structural defects cast doubt on the legitimacy of the entire proceeding and demand an automatic reversal." *Id.* at 944.

¶ 25    The record on appeal shows that on October 5, 2011, the first attorney representing Townsend informed the trial court that Townsend would be receiving a jury trial. Then, on January 23, 2012, the first attorney withdrew, and Townsend retained the second attorney. On March 2, 2012, the court asked this second attorney if Townsend would be receiving a bench or jury trial, and the second attorney stated, "It will likely be a jury trial date." On May 24, 2012, while Townsend was present, the second attorney confirmed that Townsend would be receiving a jury trial. Nothing in the appellate record suggests that Townsend ever objected to being tried by jury. The jury trial commenced on November 26, 2012.

¶ 26    Townsend later filed his postconviction petition with an affidavit, alleging that he had told his first attorney that he desired a bench trial. However, the first attorney "refused" to allow him to waive a jury trial and told Townsend she was "running the show." Townsend's petition and supporting affidavit did not mention that the first attorney withdrew from his case or that he retained new counsel. The petition and affidavit also set forth no allegations regarding any discussions Townsend had with his second attorney about the desire to receive a bench trial, and

there were no allegations that the second attorney refused to allow Townsend to waive a jury trial.

¶ 27                         1. Failure to Object in Court

¶ 28     We first consider whether Townsend's failure to object in court to receiving a jury trial defeats any arguable claim that his trial counsel usurped his decision to waive a jury trial.

¶ 29     Townsend relies on *People v. Barkes*, 399 Ill. App. 3d 980, 982 (2010), in which the defendant filed a postconviction petition claiming that (1) the defendant's " 'counsel refused to allow [him] to testify in [his] own defense at [his] jury trial, despite [his] request to do so' " and (2) the defendant " 'made no in-court fuss or motion concerning [his] trial counsel refusing to permit [his] request[ ] for bench trial *** because [he] thought they were [trial counsel's] call[ ] to make.' " The postconviction petition was dismissed at the second stage of postconviction proceedings. *Id.* at 984. Nonetheless, despite the defendant's failure to inform the trial court that he wanted a bench trial, we found that the defendant was entitled to an evidentiary hearing on this issue. *Id.* at 988.

¶ 30     The holding in *Barkes* is analogous to this case. Much like the defendant in *Barkes*, Townsend filed a postconviction petition alleging that he had discussed wanting a bench trial with the public defender, but the public defender told Townsend she was " 'running the show' " and would request a jury trial. *Id.* at 982. Also as in *Barkes*, Townsend did not inform the trial court that he wished to have a bench trial when his counsel allegedly failed to do so. *Id.*

¶ 31     The State asserts that *Barkes* is no longer good law, and argues that we should follow the precedent set forth in *People v. Kiefel*, 2013 IL App (3d) 110402, and *People v. Brown*, 2013 IL App (2d) 110327. However, the defendants in these cases alleged that the record failed to show they knowingly and voluntarily waived their right to a bench trial, where the trial court did not

admonish the defendants as to the right. *Kiefel*, 2013 IL App (3d) 110402, ¶ 14; *Brown*, 2013 IL App (2d) 110327, ¶ 18. In both cases, this court found that the trial court need not obtain an on-the-record waiver of a defendant's right to a bench trial. *Brown*, 2013 IL App (2d) 110327, ¶ 23; *Kiefel*, 2013 IL App (3d) 110402, ¶ 18.

¶ 32    While a trial judge is not required to admonish a defendant as to his right to waive a jury trial, we recommend that trial judges confirm directly with defendants whether they are selecting a bench or jury trial. Doing so would be best practice and would easily resolve issues such as the one currently raised on appeal.

¶ 33    Here, Townsend appeals from a summary dismissal of his postconviction petition, which claimed that Townsend's counsel was ineffective for usurping his desire to have a bench trial. His claim is not that the trial court failed to admonish him but, rather, that his trial counsel told him he did not have a choice. As such, *Brown* and *Kiefel* are inapplicable. See *People v. Smith*, 326 Ill. App. 3d 831, 847-48 (2001) (distinguishing an improper jury waiver claim from a claim that a defendant's trial counsel improperly caused the defendant to waive a jury).

¶ 34    We also find that the State's reliance on *People v. Powell*, 281 Ill. App. 3d 68 (1996), is misplaced. In *Powell*, the defendant filed a *pro se* posttrial motion alleging that his trial counsel was ineffective for advising him against a bench trial. *Id.* at 70. Following a hearing on the motion, the trial court denied the defendant's motion and found that trial counsel had merely advised the defendant to take a jury trial, which was a matter of reasonable trial strategy. *Id.* at 72. The defendant filed a direct appeal, arguing that his trial counsel advised him to proceed with a jury trial under the misapprehension that the defendant "had the constitutional right to waive a jury trial at any point *** until the jury rendered its verdict." *Id.* at 73-74. This court found that the trial counsel did not provide ineffective assistance because counsel's recommendation to

elect a jury trial was a matter of trial strategy. *Id.* at 74. While the reviewing court in *Powell* stated in passing that the defendant should have contemporaneously objected to receiving a jury trial when his trial counsel failed to do so (*id.* at 73), this court has subsequently noted that this portion of *Powell* is dicta (*People v. Holley*, 377 Ill. App. 3d 809, 813 (2007)).

¶ 35    *Powell* is also distinguishable because the trial counsel in *Powell* merely advised the defendant to elect a jury trial. *Id.* at 72. Here, Townsend claims that the public defender did not advise him to elect a jury trial but rather told Townsend it was her choice to make.

¶ 36    We find *Barkes* to be more applicable to this case than *Powell*. As such, we conclude that Townsend's mere silence on the record when his counsel requested a jury trial does not affirmatively rebut Townsend's ineffective assistance claim, as the State argues.

¶ 37                         2. Allegations Regarding Second Attorney

¶ 38    We now consider whether Townsend can state an arguable ineffective assistance claim as to his first attorney for usurping his right to waive a jury trial, when another attorney voiced the final decision for Townsend to receive a jury trial. This issue essentially amounts to a question of sufficiency, namely, whether Townsend's postconviction petition was sufficient to set forth an arguable claim of ineffective assistance, when it makes no allegations regarding Townsend's second attorney.

¶ 39    Section 122-2 of the Act (725 ILCS 5/122-2 (West 2016)) sets forth the pleading requirements for a postconviction petition and states:

> "Contents of Petition. The petition shall identify the proceeding in which the petitioner was convicted, give the date of the rendition of the final judgment complained of, and clearly set forth the respects in which petitioner's constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its

allegations or shall state why the same are not attached. The petition shall identify any previous proceedings that the petitioner may have taken to secure relief from his conviction. Argument and citations and discussion of authorities shall be omitted from the petition."

The purpose of this section is merely "to establish that a petition's allegations are capable of objective or independent corroboration." (Internal quotation marks omitted.) *People v. Delton*, 227 Ill. 2d 247, 254 (2008). In first-stage postconviction proceedings, "the petition cannot be said to be at issue," and the circuit court acts "strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit." (Internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 12.

¶ 40    "To survive first-stage dismissal, a *pro se* petitioner need only present the 'gist' of a constitutional claim, which is a 'low threshold' requiring only a limited amount of detail in the petition." *People v. Jones*, 211 Ill. 2d 140, 144 (2004). "[A] *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim to survive summary dismissal." *People v. Brown*, 236 Ill. 2d 175, 188-89 (2010). However, "while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55.

¶ 41    The Illinois Supreme Court requires courts to review *pro se* postconviction petitions "with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 21. Our supreme court has also emphasized that "when a petitioner's claims are based upon matters outside the record, *** it is not the intent of the [A]ct that [such] claims be adjudicated on the pleadings." (Internal quotation marks omitted.) *People v. Coleman*,

183 Ill. 2d 366, 382 (1998). "[A] trial court should not summarily dismiss a postconviction petition unless its lack of legal and factual merit is certain and indisputable." *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 49.

¶ 42 We find *Brown*, 236 Ill. 2d 175, instructive. In *Brown*, the petitioner claimed that his trial attorney was ineffective for failing to request a hearing on his fitness to stand trial. *Id.* at 185. The State argued that the petition was insufficient because the petitioner failed to allege that there was a *bona fide* doubt of his fitness to stand trial or that the petitioner informed his trial counsel that his medication affected his ability to understand the proceedings. *Id.* at 187-88. According to the State, the petitioner's counsel could not have been deficient when he did not know this information. *Id.* at 188. The supreme court, however, rejected the State's arguments, and held that "[t]he State's contentions that petitioner did not specifically plead certain facts on deficient representation and prejudice are inconsistent with the standards applicable to first-stage postconviction proceedings." *Id.* at 189. The supreme court reasoned that "to survive summary dismissal, a postconviction petition need present only a limited amount of detail and is not required to set forth a constitutional claim in its entirety." *Id.* at 188. Thus, the supreme court found that summary dismissal of the petition was improper and remanded the case for second-stage postconviction proceedings. *Id.* at 195-96.

¶ 43 Here, Townsend alleged that his first attorney provided him ineffective assistance by not allowing him to waive a bench trial. Much like the petitioner in *Brown*, Townsend failed to allege that he ever told his second attorney of the concern underlying his postconviction claim, which in this case was Townsend's desire for a bench trial. However, this failure was not fatal, as Townsend was only required to present "a limited amount of detail," and not the "constitutional claim in its entirety." *Id.* at 188. In light of *Brown*, and a number of other supreme court cases,

we find that it is not fatal to Townsend's claim that Townsend failed to allege facts regarding any discussions with his second attorney. See *People v. Edwards*, 197 Ill. 2d 239, 247, 253-57 (2001) (finding summary dismissal was improper, where the defendant alleged in his postconviction petition that his counsel ineffectively failed to withdraw his guilty plea but did not allege grounds for withdrawing the guilty plea); see also *Hodges*, 234 Ill. 2d at 19-22 (finding summary dismissal improper where the defendant alleged that his counsel ineffectively failed to present testimony from three witnesses, but the witnesses' alleged testimony would only have supported a theory of " 'unreasonable belief' " second degree murder and not a theory of self-defense, and the petition only focused on self-defense). Townsend's petition sets forth an arguable claim that his first attorney told him he did not have the choice to waive a jury trial and the circuit court was to take this allegation as true. See *White*, 2014 IL App (1st) 130007, ¶ 18.

¶ 44     The State asserts that any ineffective assistance claim that Townsend could have is based on speculative or subjective claims, namely, that Townsend may have believed there was no point in telling his second attorney he wanted a bench trial. Thus, the State argues that summary dismissal of the petition was proper. We disagree.

¶ 45     We acknowledge that Townsend's petition lacks any allegations regarding his second attorney, and that Townsend's second attorney made the final confirmation with the trial court that Townsend would receive a jury trial. However, Townsend's claim could nonetheless be easily corroborated through affidavits and testimony from Townsend's second attorney, who could simply explain any discussions he may have had with Townsend about having a jury trial or state that he never raised the question with Townsend. See *Delton*, 227 Ill. 2d at 254-55 (explaining that a postconviction petition need only set forth facts that can be corroborated and are objective in nature). The nature of Townsend's discussions with the second attorney, if any,

could easily resolve the question of whether Townsend actually wanted a bench trial but was denied one. Moreover, the record suggests that these discussions likely occurred. When the circuit court first asked Townsend's second attorney whether Townsend would receive a bench or jury trial, the attorney stated it would "likely" be a jury trial, and then confirmed on a later date that Townsend would be tried by jury. Based on these two instances in the record, it would appear *some* sort of discussion could have occurred between Townsend and his second attorney regarding Townsend's selection. Further postconviction proceedings would clarify this point.

¶ 46    We make no finding at this stage as to whether Townsend's ineffective assistance claim merits an evidentiary hearing or whether the claim ultimately has merit. Nonetheless, we find that Townsend set forth the gist of a constitutional claim that satisfied the low threshold for pleading a claim at the first stage of postconviction proceedings. *Jones*, 211 Ill. 2d at 144. Accordingly, summary dismissal of Townsend's petition was improper, and we reverse and remand the case for second-stage postconviction proceedings.

¶ 47                    B. Request for a New Judge

¶ 48    Townsend also argues that if we remand the case back to the circuit court, he is entitled to a new judge, as Townsend would be prejudiced if his petition was considered by the same judge. Townsend reasons that the trial judge's statements on the record reveal that the judge "allowed his own beliefs" to sway his decision, regardless of the law. The State responds by conceding that the trial court erroneously based its summary dismissal of Townsend's petition on the ground that a bench trial would have returned the same result as the jury trial. Nonetheless, the State argues that an erroneous ruling is not a sufficient ground to justify remanding the case to a different judge.

¶ 49    Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) grants a reviewing court authority to, in its discretion, reassign a matter to a new judge on remand. *Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002). In order to obtain a substitution of judge at a postconviction proceeding, the defendant must show that allowing the same judge to preside over the case would result in substantial prejudice. *People v. Reyes*, 369 Ill. App. 3d 1, 25 (2006). In order to establish prejudice, the defendant "must establish animosity, hostility, ill will, or distrust towards [the] defendant." (Internal quotation marks omitted.) *People v. Patterson*, 192 Ill. 2d 93, 131 (2000). Neither erroneous rulings (*People v. Tally*, 2014 IL App (5th) 120349, ¶ 44) nor adverse rulings (*People v. Vance*, 76 Ill. 2d 171, 178 (1979)) provide sufficient reasons to believe that the court has a prejudice against the defendant. Nonetheless, we will remand a case to a different judge where the judge gives "the impression that it was flatly unwilling to consider the evidence offered by petitioner." *People v. Montanez*, 2016 IL App (1st) 133726, ¶ 44.

¶ 50    Here, the trial judge summarily dismissed Townsend's postconviction petition, at least in part, on the basis that he would have also convicted Townsend had Townsend elected a bench trial instead of a jury trial. However, as we have observed, where a defendant claims his trial counsel ineffectively usurped the defendant's right to waive a jury trial, the defendant need not show that a bench trial would have reached a different outcome. *McCarter*, 385 Ill. App. 3d at 944.

¶ 51    Townsend asserts that because the trial judge erroneously based his ruling on the finding that a bench trial would have brought the same outcome, the trial judge "allowed his own beliefs regarding the evidence to trump a proper application of well-established law." However, the mere fact that the trial judge misapplied the law is not sufficient to show that the trial judge held any prejudice against the defendant. *Tally*, 2014 IL App (5th) 120349, ¶ 44. We find nothing in

the record suggesting that the trial judge held any "animosity, hostility, ill will, or distrust" towards Townsend. (Internal quotation marks omitted.) *Patterson*, 192 Ill. 2d at 131. Accordingly, in remanding the case, we find it is not necessary to assign this case to a new judge.

¶ 52                                    III. CONCLUSION

¶ 53     For the following reasons, we reverse the judgment of the circuit court and remand the case for second-stage postconviction proceedings before the same judge.

¶ 54     Reversed and remanded.

**No. 1-17-1024**

| | |
|---|---|
| **Cite as:** | *People v. Townsend*, 2020 IL App (1st) 171024 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-CR-12446; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Caroline E. Bourland, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |